The STATE of Ohio, Appellee,

v.

RUBY, Appellant.

[Cite as *State v. Ruby,* 149 Ohio App.3d 541, 2002-Ohio-5381.]

Court of Appeals of Ohio,
Second District, Champaign County.

Nos. 02CA6 and 02CA22.

Decided Oct. 4, 2002.

542

544

Nick A. Selvaggio, Champaign County Prosecuting Attorney, for appellee.

Andrew J. Gottman, for appellant.

---

GRADY, Judge.

{¶ 1}   Defendant, Jeffrey J. Ruby, appeals from his conviction and sentences for possessing crack cocaine, possessing drug paraphernalia, and theft. The convictions and sentences were imposed on verdicts of guilty returned by a jury.

{¶ 2}   On May 21, 2001, Mechanicsburg police officer Doug Smith received a radio report that the driver of a vehicle approaching Mechanicsburg might be under the influence of alcohol. It was also reported that the vehicle, a Ford Taurus, had a broken taillight.

{¶ 3}   Officer Smith spotted the vehicle and followed it. The vehicle drove into a convenience store drive-through, the Burg One, and emerged shortly after. Officer Smith stopped the vehicle after it had traveled a short distance.

{¶ 4}   Defendant Ruby was the operator of the vehicle. He had one passenger. Ruby appeared to Officer Smith to be nervous and hyperactive. Ruby, who identified himself as Ronald Hill, was unable to produce a driver's license, registration, or proof of insurance. Officer Smith saw open and closed alcohol containers in the vehicle, and he smelled an odor of alcohol from inside. He asked Ruby to submit to field sobriety tests.

{¶ 5}   When Ruby stepped from the vehicle, he told Officer Smith, "I know what this is about. The woman back at the Burg One Stop gave me too much change back." Ruby then handed Officer Smith one hundred and fifty dollars in cash and asked him to return it to the cashier at Burg One and to let him go on his way. It was at that point that the police radio dispatcher called Officer Smith to tell him that the cashier at the Burg One had just reported a theft involving a quick-change scheme employed by the driver of a vehicle that had stopped there shortly before.

{¶ 6}   Ruby failed the field sobriety tests, and he and his passenger were arrested. Officer Smith returned with Ruby to the Burg One, where the cashier, Lucy Sherman, identified Ruby as the man who had swindled her. Officer Smith then took both men to jail. Ruby was booked under the name he gave Officer Smith, which was Ronald Hill.

{¶ 7}   Officer Smith returned to where Ruby's vehicle was parked and searched it. He found a crack pipe and a small rock of crack cocaine on the floor behind the driver's seat, from which they apparently had fallen when Officer

Smith probed between the seat and seat back. He also discovered a checkbook belonging to Ruby in the glove box.

{¶ 8} Officer Smith later learned defendant Ruby's true name. When Officer Smith called the vehicle's registered owner, Donna Ruby, she confirmed that the driver was her husband, Jeff Ruby. She also said that Ronald Hill is her son's name.

{¶ 9} Defendant was indicted for possession of crack cocaine, R.C. 2925.11(A), possession of drug paraphernalia, R.C. 2925.14(C)(1), and theft, R.C. 2913.02(A)(3).

{¶ 10} At trial, Lucy Sherman identified Ruby as the man who had cheated her out of $179.42 in the fast-change scheme. Defendant's wife testified that the car he drove was hers, and that drug users had had access to it that day. Defendant did not testify.

{¶ 11} Both Officer Smith and another witness, Robert DeWitt, testified that Ruby declined to make a statement after being given *Miranda* warnings. DeWitt testified:

{¶ 12} "Well, he was in the holding cell, meaning Officer Smith went to the holding cell. Mr. Smith yelled, asked him, 'Mr. Ruby?' Mr. Ruby turned up because he was lying there looking at us. Then he told him that we had found out his real name and told him the item that we found in the car. Mr. Smith began to read him his *Miranda* rights and then asked him if he wanted to comment about it and he replied, 'No, you're gonna do whatever you want. There's nothing I can say is gonna change it.' And then he laid back down."

{¶ 13} Officer Smith testified:

{¶ 14} "* * * I walked in, and he was laying [sic] with a blanket pulled over his head. I said 'Mr. Ruby?' and he pulled his blanket down, looked at me, and asked 'What.' I said 'I understand your name is Jeffrey Ruby.' And he said 'Man, leave me alone.' And I then proceeded to read him his *Miranda* rights. I asked, I informed him that I had found some other items in his car, including the pipe and the suspected crack cocaine. Asked him if he wanted to tell me anything about that. He said 'Man, you're gonna do whatever you're gonna do. Just leave me alone. Let me go back to sleep.' And he pulled the blanket back over his head."

{¶ 15} On cross-examination, Officer Smith conceded that Ruby was merely exercising his constitutional right when he elected not to speak or to deny that the crack and crack pipe found in his car belonged to him. Following that, on redirect of Officer Smith by the prosecutor, the following colloquy ensued:

{¶ 16} "Q. He also had the opportunity at that time to say 'I don't know what you're talking about; that stuff wasn't mine'?

{¶ 17} "A. That's correct."

{¶ 18} The prosecutor exploited the fact of defendant's silence in his statements to the jury. In his opening statements the prosecutor told the jury:

{¶ 19} "We believe that the evidence will show, and that the defendant will be convicted not only by what he said on May 21st, 2001, but also by what he did not say."

{¶ 20} In his closing argument the prosecutor said:

{¶ 21} "I told you that the defendant would be convicted on what he said and what he didn't say."

{¶ 22} "We know that the defendant, when confronted with the crack pipe and the cocaine, didn't deny that it was his crack pipe. Didn't deny that it was his cocaine. The judge will instruct you that—use your common sense, and if, in fact, you're using your common sense, what are you going to do? You're going to deny it."

{¶ 23} The jury returned verdicts of guilty, and defendant was convicted and sentenced. He filed a timely notice of appeal.

## FIRST ASSIGNMENT OF ERROR

{¶ 24} "The trial court committed reversible error in allowing the state to use evidence of appellant's silence after receiving his *Miranda* warnings as evidence of his guilt in its opening statement, case-in-chief and summation."

{¶ 25} The Fifth Amendment to the United States Constitution guarantees that no person shall be compelled in any criminal case to be a witness against himself. See, also, Section 10, Article I of the Ohio Constitution. This privilege is protected by advising a person who is subject to custodial interrogation that he has the right to remain silent. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. *Miranda* warnings contain an implied promise, rooted in the Constitution, that silence will carry no penalty. *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91; *Wainwright v. Greenfield* (1986), 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623.

{¶ 26} If a defendant's exercise of the Fifth Amendment right to remain silent may be offered to demonstrate guilt, then the right is rendered meaningless. *State v. Sabbah* (1982), 13 Ohio App.3d 124, 13 OBR 155, 468 N.E.2d 718. What is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the state's assurance that the invocation

of those rights will not be penalized. *Wainwright v. Greenfield,* supra. Using a defendant's invocation of his constitutional right to remain silent as affirmative proof of his guilt is fundamentally unfair and violates the Due Process Clause. *Doyle v. Ohio,* supra; *Wainwright v. Greenfield,* supra; *State v. Rogers* (1987), 32 Ohio St.3d 70, 512 N.E.2d 581.

{¶ 27} R.C. 2925.11(A) states: "No person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.14(C)(1) states: "No person shall knowingly use, or possess with purpose to use, drug paraphernalia." Defendant was charged with both offenses on the basis of the crack cocaine and crack pipe that were found in the car he was driving.

{¶ 28} R.C. 2925.01(K) states:

{¶ 29} " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶ 30} Possession may be actual or constructive. When possession is alleged to be constructive, the crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion or control over it. *State v. Brooks* (1996), 113 Ohio App.3d 88, 680 N.E.2d 248.

{¶ 31} The evidence the state offered concerning defendant's exercise of his Fifth Amendment rights, coupled with the prosecutor's argument concerning the inferences the jury should draw from it, was offered to prove defendant's guilt of the two possession charges and was improper. The trial court erred when it allowed the evidence to be introduced. However, defendant failed to object. In that event, the error concerned is waived unless it rises to "plain error." *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364; *State v. Wickline* (1990), 50 Ohio St.3d 114, 552 N.E.2d 913. Plain error does not exist unless it can be said that but for the error the outcome of the trial clearly would have been different. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804; *State v. Issa* (2001), 93 Ohio St.3d 49, 752 N.E.2d 904.

{¶ 32} Had the evidence that defendant exercised his Fifth Amendment rights been excluded, the remaining evidence probative of the two possession charges is sufficiently convincing to prevent a finding that the defendant clearly would not have been convicted of those charges, as he was. Therefore, plain error is not shown.

{¶ 33} The first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

{¶ 34} "Appellant's convictions for possession of a controlled substance and possession of drug paraphernalia are against the manifest weight of the evidence."

{¶ 35} Defendant points out that the only evidence the state presented to demonstrate that he knowingly possessed the crack pipe and crack cocaine in question was that those items were found inside the vehicle defendant was driving. Defendant also points out that the state failed to prove that he was the only person who had access to that vehicle that day. Further, the evidence demonstrates that the vehicle belonged to defendant's wife, that defendant frequently loaned the vehicle to other people, including known drug dealers, and that when he was arrested, a known drug dealer who had used the car earlier that day was in the car with him. Thus, defendant argues, the evidence is insufficient to prove that he knowingly possessed the crack pipe and crack cocaine, and his convictions for those offenses are against the manifest weight of the evidence.

{¶ 36} Constructive possession exists when an individual is able to knowingly exercise dominion or control over an object, even though it is not within his immediate physical possession. *State v. Hankerson* (1982), 70 Ohio St.2d 87, 24 O.O.3d 155, 434 N.E.2d 1362. Readily usable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession. *State v. Brown* (July 14, 2000), Montgomery App. No. 17891, 2000 WL 966161; *State v. Scalf* (1998), 126 Ohio App.3d 614, 710 N.E.2d 1206. Circumstantial evidence and direct evidence have the same probative value. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶ 37} A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492:

{¶ 38} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶ 39} A weight-of-the-evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Hufnagel* (Sept. 6, 1996), Montgomery App. No. 15563, 1996 WL 501470. The proper test to apply to that inquiry is the one set forth in *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717:

{¶ 40} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

{¶ 41} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97–CA–03, 1997 WL 691510.

{¶ 42} The evidence demonstrates that defendant frequently loaned his wife's vehicle to other people, including known drug dealers, and that defendant's wife often found and removed drug paraphernalia from her vehicle. On the day defendant was arrested, he had loaned the vehicle to a known drug dealer earlier in the day, and the drug dealer was in the vehicle with defendant when Officer Smith stopped them. Defendant was driving that vehicle when Officer Smith stopped it. A crack pipe and piece of crack cocaine were recovered from the vehicle's floor of the rear passenger compartment, behind the driver's seat in which defendant was seated. Defendant's checkbook was found in the glove box.

{¶ 43} Viewing the circumstantial evidence in this case in a light most favorable to the state, a rational trier of fact could conclude beyond a reasonable doubt that defendant constructively possessed the drug paraphernalia and crack cocaine found in the vehicle. Defendant's conviction for those offenses is supported by legally sufficient evidence.

{¶ 44} Moreover, despite defendant's claim that he did not know there was contraband in the vehicle and his suggestion that those items were put there by the known drug dealer who was also in the vehicle, in reviewing the record as a whole we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice was resulted. It was within the province of the jury as triers of fact to determine the credibility of the witnesses. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Defendant's conviction for the drug offenses is not against the manifest weight of the evidence.

{¶ 45} The second assignment of error is overruled.

## THIRD ASSIGNMENT OF ERROR

{¶ 46} "The trial court committed reversible error in allowing a witness to identify appellant in court based on prior prejudicially suggestive identifications."

{¶ 47} Defendant argues that the trial court abused its discretion in not excluding his identification by Lucy Sherman, the clerk at the Burg One Stop, because her identification was based upon two impermissibly suggestive pretrial identification procedures. The first occurred after defendant was stopped and taken into custody by Officer Smith, and was then taken back to the Burg One Stop and presented to Lucy Sherman, who identified him in a "show-up" procedure. The second occurred the night before defendant's trial began, when the prosecutor showed Lucy Sherman a single photograph of defendant to aid her in identifying him.

{¶ 48} First, we note that defendant failed to file any pretrial motion to suppress the identification testimony in this case. Thus, defendant has waived all but "plain error" regarding that issue. Crim.R. 12(C) and (H).

{¶ 49} The critical inquiry with respect to pretrial identifications is whether on the totality of the circumstances the identification was reliable, notwithstanding that the identification procedure may have been suggestive. *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *State v. Davie* (1997), 80 Ohio St.3d 311, 686 N.E.2d 245. The factors to consider include the opportunity of the witness to view the suspect at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description, the level of certainty demonstrated by the witness at the pretrial identification, and the length of time between the crime and the pretrial identification. Id.

{¶ 50} The evidence demonstrates that the transaction between defendant and Lucy Sherman at the Burg One Stop lasted several minutes, during which time Sherman talked to defendant and exchanged money with him. Sherman realized that defendant had swindled her after he drove away. Officer Smith stopped defendant a short distance from the Burg One Stop. Lucy Sherman could see that police had stopped defendant down the street. Just minutes after defendant left the Burg One Stop, he was returned there by Officer Smith. Lucy Sherman then identified defendant as the perpetrator, saying that she remembered his face. Moreover, before defendant was returned to the Burg One Stop by police, he admitted that he had been there shortly before and had been given too much change by the clerk.

{¶ 51} On the totality of these facts and circumstances, Lucy Sherman's identification of defendant at this show-up procedure was reliable. Accordingly, we see no error, much less plain error, in admitting this identification evidence.

{¶ 52} With respect to the prosecutor's conduct in showing Lucy Sherman a single photograph depicting only defendant the night before trial in order to aid her in-court identification, we believe that this procedure is much more suggestive and might well create a substantial likelihood of misidentification. We strongly disapprove of such tactics. However, defendant made statements to Officer Smith implicating him in the incident at the Burg One Stop. Therefore, any prejudice to defendant arising from Sherman's view of the single photograph is not a basis for reversible error. We cannot say that but for Sherman's identification of defendant after seeing a single photograph, the outcome of this trial would clearly have been different. Plain error has not been demonstrated.

{¶ 53} The third assignment of error is overruled.

## FOURTH ASSIGNMENT OF ERROR

{¶ 54} "Appellant received ineffective assistance of counsel in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, which denied appellant a fair trial."

{¶ 55} Defendant complains that his trial counsel was ineffective for failure to object to (1) the prosecutor's use of defendant's invocation of his Fifth Amendment right to remain silent as evidence of his guilt, and (2) Lucy Sherman's identification testimony that was based upon suggestive pretrial procedures.

{¶ 56} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or setting aside of a death sentence requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.

{¶ 57} "The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, paragraph 2(a) of the Reporter's Syllabus.

{¶ 58} In *Strickland*, the court expressly rejected the standard employed by the plain error rule when determining whether the accused was sufficiently

prejudiced by counsel's deficient performance that reversal is required. The court pointed out that the plain error standard "presupposes that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged * * * [while] [a]n ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." The court went on to state that, instead, in order to show the prejudice which an ineffective assistance of counsel claim requires "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 59} The lesser standard for reversible error that *Strickland* defines is significant. The reasonable probability it requires the defendant to show is necessarily weighed against the burden imposed on the state to prove its case "beyond a reasonable doubt." If, then, confidence in a conviction based on that finding is undermined, the defendant must be given a new trial.

{¶ 60} As we previously discussed, the weakness in the state's case with respect to the drug charges was proving whether defendant "knowingly possessed" the crack pipe and the crack cocaine. Those items were not discovered on defendant's person but on the floor of the rear passenger compartment of the vehicle defendant drove. There was evidence that vehicle was not his, and that other people, including known drug dealers, had access to that vehicle that day.

{¶ 61} The prosecutor deliberately used defendant's exercise of his right to remain silent as evidence that those articles found in the car were defendant's, arguing that an innocent person would have denied that the contraband was his when confronted with them. That argument provided the nexus required for the jury to find that defendant knowingly possessed those items and thus was guilty.

{¶ 62} Applying the *Strickland* standard, we conclude that defense counsel's failure to object to the prosecutor's improper use of defendant's post-*Miranda* warnings silence fell below an objective standard of reasonableness and constitutes deficient performance. Moreover, in our view, absent counsel's failure to challenge the admission of that improper evidence under these facts and circumstances, there exists a reasonable probability of a different outcome on those possession charges, one sufficient to undermine our confidence in the outcome of this trial. Prejudice, under the *Strickland* standard, has therefore been demon-

strated. Defendant's conviction and sentence for possession of crack cocaine and possession of drug paraphernalia will be reversed and remanded for further proceedings.

{¶ 63} With respect to the theft offense, as we discussed, Lucy Sherman's identification of defendant as a result of the show-up procedure was reliable and therefore admissible. Defense counsel's failure to object to that evidence cannot constitute deficient performance. Counsel's failure to object to the identification made after Sherman was shown a single photograph of defendant the night before trial commenced, and his failure to move to suppress that identification, does constitute deficient performance, in our view. However, given that defendant made statements to police implicating himself in the incident that occurred at the Burg One Stop, there is not a reasonable probability of a different outcome on the theft charge had defense counsel moved to suppress Lucy Sherman's identification testimony. Prejudice resulting from counsel's omission has therefore not been shown.

{¶ 64} The fourth assignment of error is sustained in part and overruled in part.

## FIFTH ASSIGNMENT OF ERROR

{¶ 65} "The trial court erred in imposing the maximum sentence upon appellant."

{¶ 66} Defendant argues that this record fails to demonstrate that the trial court made the findings necessary to impose the maximum sentence.

{¶ 67} Defendant was found guilty of possessing a small amount of crack cocaine, a fifth degree felony. The trial court sentenced him to one year's imprisonment, the maximum sentence authorized for that offense. R.C. 2925.11(C) and R.C. 2929.14(A)(5). In order to impose the maximum sentence, the trial court must find either that defendant "committed the worst forms of the offense" or "pose[s] the greatest likelihood of committing future crimes," and give reasons for the finding. R.C. 2929.14(C) and R.C. 2929.19(B)(2)(d); *State v. Edmonson* (1999), 86 Ohio St.3d 324, 715 N.E.2d 131. The trial court did that in this case.

{¶ 68} The trial court's journal entry imposing sentence states:

{¶ 69} "The court has considered and weighed the statutory sentencing factors and makes these findings.

{¶ 70} "* * *

{¶ 71} "The factors that determine that recidivism is more likely are:

{¶ 72} "1. Defendant's history of criminal convictions.

{¶ 73} "2. The Defendant has not responded favorably to sanctions previously imposed.

{¶ 74} "3. Defendant's drug abuse pattern is related to the offense and the Defendant does not acknowledge the pattern."

{¶ 75} The foregoing language, while not identical to that of R.C. 2929.14(C), is nevertheless sufficient in our view to portray the statutory finding that "defendant poses the greatest likelihood of committing future crimes." Recitation of the exact words used in a statute in a talismanic ritual is not required. *State v. Kelly* (2001), 145 Ohio App.3d 277, 281, 762 N.E.2d 479. Additionally, the trial court's entry includes the reasons for its recidivism finding. Moreover, the evidence presented at the sentencing hearing includes a discussion of defendant's lengthy prior record of arrests and convictions for drug offenses, and supports the reasons the trial court gave for its finding that recidivism is more likely.

{¶ 76} The fifth assignment of error is overruled.

## SIXTH ASSIGNMENT OF ERROR

{¶ 77} "The cumulative errors described above so prejudiced appellant that a new trial is required."

{¶ 78} Defendant argues that the cumulative effect of the errors that occurred during his trial deprived him of a fair trial. *State v. Moore* (1998), 81 Ohio St.3d 22, 41, 689 N.E.2d 1. In order to have cumulative error, multiple errors must be present. Because we have found only one prejudicial error, there is no cumulative error.

{¶ 79} The sixth assignment of error is overruled.

## SEVENTH ASSIGNMENT OF ERROR

{¶ 80} "The trial court incorrectly calculated appellant's jail time credit."

{¶ 81} The written judgment of conviction and sentence that the trial court entered on January 30, 2002, states: "[T]here is no jail time credit." Defendant filed a timely notice of appeal from that judgment on February 8, 2002.

{¶ 82} Subsequently, defendant filed two motions, on February 13 and June 6, 2002, asking the court to credit him with time he served in jail following his convictions and until he was sentenced.[1] The court denied both motions. Defendant filed a timely notice of appeal following the second denial.

---

1. Defendant also filed a motion on April 22, 2002, asking for credit for the time he was incarcerated prior to trial and before being released on a bond. The trial court granted that motion, crediting defendant with forty-two days against his sentence.

{¶ 83}   Defendant's second appeal was docketed as case No. 02CA22.   Defendant's prior appeal, founded on the notice of appeal he filed on February 8, 2002, was docketed as case No. 02CA6.

{¶ 84}   The state argues that the second appeal, case No. 02CA22, is barred by the doctrine of res judicata.   We agree with defendant, however, that res judicata does not apply because both appeals arise from the proceedings in but one underlying action, and res judicata applies to subsequent actions.

{¶ 85}   Nevertheless, two other problems confront defendant in case No. 02CA22.   The first is that the notice of appeal that defendant filed on February 8, 2002, deprived the trial court of jurisdiction to grant the relief defendant sought in his subsequent motions of February 13 and June 6, 2002. *State ex rel. Special Prosecutors v. Judges* (1978), 55 Ohio St.2d 94, 9 O.O.3d 88, 378 N.E.2d 162.   Therefore, any error the court committed in denying those motions is moot.

{¶ 86}   Defendant's second problem is that, not having raised this issue in the error he assigned in the merit brief he filed in case No. 02CA6, defendant may have waived his right to complain of it further.   However, waiver is a discretionary doctrine, and we may decline to apply it in the interests of justice. We do that here, believing that if defendant is again convicted on remand, the same issue may again arise.   Therefore, the two cases are consolidated for purposes of review and the issue defendant raises will be considered as the seventh assignment of error.

{¶ 87}   The jail time credit of which defendant complains involves the time between his conviction on November 20, 2001, and the judgment entry of conviction and sentence the court journalized on January 30, 2002, a period of seventy-one days.   Defendant remained incarcerated during that time after the court exercised the discretion conferred on it by Crim.R. 32(A) to commit him rather than set a bond.   The same rule requires that "[s]entence shall be imposed without unnecessary delay."

{¶ 88}   Defendant relies on R.C. 2967.191, which states:

{¶ 89}   "The adult parole authority shall reduce the minimum and maximum sentence or the definite sentence of a prisoner by the total number of days that the prisoner was confined for any reason arising out of the offense for which he was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine his competence to stand trial or sanity, confinement in a community based correctional facility and program or district community based correctional facility and program, and confinement while awaiting transportation to the place where he is to serve his sentence."

{¶ 90} The relief that R.C. 2967.191 provides is available from the Adult Parole Authority, not from the court, which was formerly charged with the duty to grant it by Crim.R. 32.2, prior to its 1998 amendment. That is not to say that the court may not grant the same jail time credit applicable to the sentence it imposes. However, not being authorized to grant the particular relief defendant asked of it, the trial court cannot be found to have erred when it denied him that relief. This holding is subject to a caveat, however.

{¶ 91} We have encouraged the trial courts of this appellate district to state in their sentencing entries the amount of jail time credit to which a defendant is entitled, as an aid to the Adult Parole Authority in discharging the duty imposed on it by R.C. 2967.191. *State v. Reichelderfer* (Apr. 30, 1999), Montgomery App. No. 17445, 1999 WL 252798. We have also held that when, as here, the court denies a motion for jail time credit, the court should state a basis for its holding. *State v. Webb* (June 30, 1999), Greene App. No. 99CA11, 1999 WL 961306. We have remanded for that purpose when the court failed to state its reasons. Id.

{¶ 92} The court stated no basis for its holding here. It appears that the court may have adopted the state's contention that defendant was not entitled to jail time credit for the term between his conviction and sentence because he was then also incarcerated on independent misdemeanor charges. R.C. 2967.191 is not concerned with that possibility, however. Instead, it mandates jail time credit for "the * * * number of days that the prisoner was confined for any reason arising out of the offense for which he was convicted." Unlike the triple-count speedy trial provision, R.C. 2967.191 is not concerned with whether the defendant was also incarcerated at the same time for independent charges or offenses. Any incarceration arising out of the offense of which he is convicted applies, even though he was then incarcerated on other charges as well. Again, however, that is a matter for the Adult Parole Authority, not the court.

{¶ 93} The seventh assignment of error is overruled.

{¶ 94} Defendant's conviction and sentence for possession of cocaine and possession of drug paraphernalia will be reversed, and that cause is remanded to the trial court for further proceedings pursuant to our disposition of the fourth assignment of error. Defendant's conviction and sentence for theft will be affirmed.

Judgment reversed in part,
affirmed in part
and cause remanded.

WOLFF, P.J., and FREDERICK N. YOUNG, J., concur.