{¶ 1} Samuel Searcy ("Appellant") appeals from the five-year maximum sentence he received from the Mahoning County Common Pleas Court after a jury convicted him of aggravated vehicular homicide, with specifications for driving under the influence ("DUI") and driving under suspension ("DUS"). Appellant challenges the sentence imposed on two grounds. First, Appellant maintains that the trial court failed to make the findings required under R.C. 2929.14(C) for imposing a maximum term. Second, Appellant argues that the trial court erred by failing to ask him directly if he wished to exercise his right to allocution. After reviewing the record, we reverse and remand this cause for the trial court to determine whether a maximum sentence is warranted under R.C.2929.14(C), and if so, to amend its judgment entry to expressly reflect that decision and the reasons underpinning it. We also conclude that the trial court's failure to expressly provide Appellant, himself, the right of allocution was harmless.
 {¶ 2} On January 17, 2000, while traveling east on the Ohio Turnpike, Appellant crashed his sport utility vehicle into the rear end of a Ford Contour driven by Brenda Wyman. The impact forced the Ford off the highway and onto the berm where it careened into a car carrier stopped along side the road. Ms. Wyman, a nurse and mother of five children, was killed. Witnesses estimated Appellant's speed just prior to the collision at upwards of 90 miles per hour. A subsequent test revealed that Appellant had a blood alcohol level of .219. Police at the scene noted his slurred speech, glassy eyes, and the fact that he reeked of alcohol. Appellant admitted that he was drinking.
 {¶ 3} A grand jury indicted Appellant, charging him with aggravated vehicular homicide with DUI and DUS specifications. On September 1, 2000, a jury found him guilty.
 {¶ 4} Prior to sentencing, friends and family of both Appellant and the victim offered their respective opinions on the length of sentence the court should impose. The record contains an impressive assortment of letters each addressing whether Appellant should receive a maximum or minimum term of imprisonment. In a six-page handwritten submission, Appellant expressed remorse over the accident, his role in it, and a desire to somehow rectify the irreparable damage he caused. The following passage is illustrative of the tone of that submission:
 {¶ 5} "* * * I must recognize that alcohol use is a contributing factor in most accidents and fatalities. I recognize now that this is a serious disease in our society that many are ignorant about. As it relates to my substance abuse I had been clean since the 1994 D.U.I. I had made great progress in recovery until December of 1999. However, I relapsed and that downward emotional path began. Another reason January 17, 2000 is the worse (sic) haunting day of my life is because I purposed that morning to check into Gateway Rehab. Center in Monroeville, Pa. I became preoccupied with church obligations, M.L.K Holiday, and, a 16 yr. old pregnant daughter who had ran away from home and had been missing for three (3) days. I wish I had checked in that morning like I had promised myself. But, that was no excuse for me to get on the road * * *. It was not worth the life of Ms. Wyman. After I was released from jail on bond, I immediately checked into Gateway * * * I completed successfully a treatment program * * *." (Appellant's submission Sept. 16, 2000, pp. 2-3).
 {¶ 6} At the sentencing hearing, representatives from both sides made extensive oral presentations in aggravation and mitigation. Before imposing the maximum sentence, the trial court made the following findings:
 {¶ 7} "You have a history of recidivism. Anything less than the maximum sentence would demean — would be to demean the life of Brenda Wyman and a civilized society * * * Given the serious nature of the crime, causing the worst possible outcome, the death of another, your likelihood of recidivism — I do respect your remorse in this matter — five years maximum sentence." (Sentencing Tr. pp. 30-31).
 {¶ 8} In the judgment entry reflecting that decision the court found that the shortest term would demean the seriousness of the offense and would not adequately protect the public. The court also found that Appellant posed, "a great risk of recidivism due to prior convictions of DUI's and not having a valid driver's license." (Judgment Entry, Oct. 6, 2000, p. 2).
 {¶ 9} On October 10, 2000, Appellant filed timely notice of appeal from the trial court's decision.
 {¶ 10} In his first assignment of error Appellant contends that,
 {¶ 11} "The trial court erred when it sentenced appellant to the maximum allowable prison term under the sentencing guidelines because such a sentence was not supported by the record and because the court failed to make the requisite findings required by Ohio Rev. Code Ann. § 2929.14(C)."
 {¶ 12} Under R.C. 2929.14(C), a maximum sentence is improper unless the trial court finds that the defendant falls into one of four categories: (1) the crime is one of the worst forms of the offense; (2) the defendant poses the greatest likelihood of committing future crimes; (3) the defendant is a major drug offender; or 4) the defendant is a repeat violent offender. In the event the court opts to impose the maximum sentence it must expressly state that the offender satisfies one of the criteria listed under R.C. 2929.14(C). The trial court must also support that decision with valid, fact-based reasoning. See R.C.2929.19(B)(2)(d); State v. Edmonson, 86 Ohio St.3d 324, 1999-Ohio-110; and State v. Johnson (Nov. 29, 2002), 11th Dist. No 2001-A-43, 2002-Ohio-6570. This Court has emphasized that statements by a trial court which only impliedly demonstrate that it made the requisite finding pursuant to R.C. 2929.14(C) will not suffice. State v. Gist, 7th Dist. No. 99-CO-34, 2002-Ohio-5241.
 {¶ 13} To determine whether the court articulated the necessary findings and supporting reasons, we look to the court's remarks at the sentencing hearing as well as those contained within the subsequent judgment entry. See State v. Rogers, 7th Dist. No. 01CO5, 2002-Ohio-1150, ¶ 16; State v. Jackson (April 20, 2001), 11th Dist. No. 99-L-134; State v. Monroe (May 8, 2001), 10th Dist. No. 00AP752. InEdmonson, supra at 327-328, the Ohio Supreme Court similarly evaluated the validity of a maximum sentence based on the contents of both the transcript and the journal entry.
 {¶ 14} The record demonstrates several grounds upon which a finding that Appellant posed the greatest likelihood of committing future crimes and merited a maximum sentence could be made. Appellant had two prior convictions for DUI, for example. The record also reflects that Appellant had a chronic history of driving without a license. Moreover, it is not unreasonable to conclude, as the trial court clearly did, that Ms. Wyman was killed because Appellant failed to take advantage of numerous opportunities to correct his behavior. Specifically, the court remarked that,
 {¶ 15} "* * * some people look for divine intervention to give you a signal as to whether you should change your life or change your job or change your attitude. And as a man of the cloth, I'm sure you have always sought divine intervention, and you got it and didn't see it.
 {¶ 16} "Your first encounter with divine intervention was your first DUI. That's a wake-up call. Your second divine intervention was your second DUI, and you ignored it. Your third divine intervention which you ignored was your family falling apart under you as a result of your drinking. And then your divine intervention ran out, and the Court's intervention came in." (Sentencing, Tr. pp. 29-30).
 {¶ 17} Such remarks, while eloquent, do not constitute the specific findings required under Ohio's felony sentencing guidelines. To validly impose a maximum sentence under our sentencing scheme, the trial court must explicitly find that the offender fell within one of the four categories set forth in R.C. 2929.14(C) and then support that conclusion with reasons in accordance with R.C. 2929.19(B)(2)(d).
 {¶ 18} In reviewing Appellant's prior convictions, the court stated that Appellant has a "history of recidivism." (Sentencing, Tr. 29). The court also noted Appellant's "likelihood of recidivism." (Sentencing, Tr. 30). The Supreme Court held in Edmonson, supra, however, that the phrase "recidivism is likely" does not constitute a sufficient finding that the defendant poses the greatest likelihood of recidivism. Edmonson, 86 Ohio St.3d at 328, 329. The judgment entry states that Appellant, "poses a great risk of recidivism due to prior convictions of DUI's and not having a valid driver's license." Accordingly, the question is whether the court's determination that Appellant, "pose[d] a great risk" is the functional equivalent of finding that an offender "poses the greatest likelihood." We acknowledge that a trial court has some small flexibility here. In articulating findings that support a maximum sentence, the trial court need not parrot the exact words used in the statute in "a talismanic ritual" for that sentence to comport with the sentencing guidelines. State v. Ruby
(2002), 149 Ohio App.3d 541, 778 N.E.2d 101, ¶ 75. We see no problem with substituting "risk" for "likelihood." The trial court could also use the characterization "highest" instead of "greatest." We have held, however, that an individual who poses "a great" risk of recidivism is not akin to one who poses "the greatest" of such risks. State v. McCarthy, 7th Dist. No. 01 BA 33, 2002-Ohio-5185, ¶ 12.
 {¶ 19} Likewise, the fact that the trial court found that Appellant committed the worst form of the offense does not constitute an alternative justification for the imposition of a maximum sentence. The trial court remarked at one point during sentencing that since the crash had the worst possible outcome, Ms. Wyman's death, this was the worst form of the offense. Since, as Appellant points out, all aggravated vehicular homicides involve at least one death, such a finding by itself would not properly justify a maximum sentence in this case. It does not appear that the court used this language intending to place Appellant in the worst form of offense category. Instead, the court appears to rely on the recidivism finding to support its maximum sentence.
 {¶ 20} On remand the trial court should clarify its order if it intended to find that Appellant fit into one of the four categories for imposing a maximum sentence, and if so, to specify which category in an amended or supplemental judgment entry, that includes reasons underlying such a finding. In the alternative, the trial court is free to hold a new sentencing hearing if such findings were not considered originally.
 {¶ 21} In his second assignment of error Appellant argues that,
 {¶ 22} "The trial court erred in failing to follow the sentencing procedure set forth in Ohio Criminal Rule 32 in failing to address the Defendant/Appellant personally prior to sentence."
 {¶ 23} Appellant maintains that he was denied his right to allocution as required under Crim.R. 32(A)(1). By rule, prior to sentencing an offender the trial court must, "[a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." Our review of the sentencing hearing in the instant case discloses that Appellant's complaint may be technically accurate, but harmless under the circumstances.
 {¶ 24} Allocution is a right long recognized under the common law. Green v. United States (1961), 365 U.S. 301, 304, 5 L.Ed.2d 670,81 S.Ct. 653 (discussing the origins of Fed.R.Crim.Pro. 32(c)(3)(C), the federal equivalent to Crim.R. 32(A)(1)). Black's Law Dictionary defines allocution in two related ways. First, it is defined as "[a] trial judge's formal address to a convicted defendant, asking him or her to speak in mitigation of the sentence to be imposed. Allocution is also defined as "an unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence." Black's Law Dictionary (7 Ed. 1999) 75.
 {¶ 25} While allocution is not a right of constitutional dimension, its violation may undermine the "constitutional reliability" of the sentence. State v. Green, 90 Ohio St.3d 352, 360, 2000-Ohio-182. The record in Green suggested that while the trial court did ask the defendant and his counsel if they wanted to say anything about certain of the charges against the defendant, the ambiguity of the invitation left the impression that the trial court was not soliciting comments as to all of the charges, principally the capital offenses. In reversing and remanding the matter for resentencing, the Ohio Supreme Court stressed that allocution, far from being an empty ritual, is an important last opportunity to plead one's case or express remorse. Id. at 360-361. See accord, State v. Campbell, 90 Ohio St.3d 320, 2000-Ohio-183.
 {¶ 26} Similarly, in State v. Land, 7th Dist. No. 00-C.A.-261, 2002-Ohio-1531, this Court concluded that it was reversible error to deny the right to allocution altogether, particularly where it was clear that the defender wanted to make a statement and was denied the opportunity to do so. Still, the Supreme Court has also acknowledged that the trial court's failure to expressly invite the offender to speak need not require reversal in all instances. In State v. Reynolds (1998),80 Ohio St.3d 670, 684, the Court found that the failure to provide an offender with the opportunity for allocution was harmless where, as here, the defendant had addressed the court in writing, counsel spoke on behalf of the defendant, and the defendant made an unsworn statement in the penalty phase of a capital case.
 {¶ 27} Moreover, some courts presented with a claim pertaining to a denial of allocution have refused to address the issue absent a showing of prejudice. In those cases, the respective courts required the offender to disclose what he would have stated or presented if had been given the opportunity to speak. State v. Mynheir (Sept. 28, 2001), 1st Dist. No. C-000849, 4; State v. McBride (Jan. 26, 2001), 2nd Dist. No. 18016, 6. In the instant case, Appellant merely states that he would have described his efforts to treat his alcoholism in 1992 and 2000.
 {¶ 28} The record indicates that the trial court was well aware that Appellant sought rehabilitation in 1992 and 2000. (Sentencing Tr. p. 5). Appellant's trial counsel so advised the court; the P.S.I. noted that Appellant was treated in 1992; and Appellant discussed the treatment he sought and received in the wake of the crash and how he grew emotionally from that experience. Further, in his lengthy missive to the court, Appellant revealed that he had been sober from 1994 until late 1999, and that but for his daughter's disappearance, he had planned to check into a rehabilitation center on the day of the crash. Consequently, it appears that Appellant was able to provide all the mitigating evidence to the trial court he would have presented had he spoken to the court.
 {¶ 29} The record before us demonstrates that the court gave Appellant's counsel ample opportunity to speak and offer mitigation on his client's behalf. When counsel concluded his remarks, one of Appellant's close associates spoke in mitigation. The trial court then inquired whether the defense had anything additional to offer in mitigation. Counsel responded that, "the defense ha[d] nothing further." (Sentencing Tr. p. 25). Thus, the defense appears to have waived Appellant's personal verbal communication, essentially inviting the error. As earlier discussed, in addition to the letters from others he offered, Appellant submitted a lengthy personal statement to the court prior to the sentencing hearing, wherein he expressed remorse over the incident, sorrow for the victim's family, and solemn assurances to the court that he had taken steps since the incident to permanently change his behavior. After reviewing this record in its entirety, two things appear clear. First, the trial court did nothing to hamper Appellant from exercising the right to allocution, and second, he was essentially able to do so in this case.
 {¶ 30} It is our opinion that the six-page letter combined with the other community support letters, the attorney's arguments, and his colleague's testimony adequately satisfied Appellant's right to allocution. Consequently, this assignment of error is overruled.
 {¶ 31} For the foregoing reasons, the judgment of the trial court is hereby reversed and this cause is remanded for the trial court to amend its judgment entry to comply with the maximum sentencing laws.
Judgment reversed and cause remanded.
Christley and Grendell, JJ., concur.