OPINION.
{¶ 1} James Parker was found guilty of domestic violence by a jury in the Montgomery County Court of Common Pleas and was sentenced accordingly. He appeals from his conviction.
 {¶ 2} The state's evidence established the following facts.
 {¶ 3} In February of 2002, Parker was involved in a romantic relationship with Melissa Rue. The couple had two children together, and Rue also had a third child. On February 22, 2002, Parker arrived at Rue's home and asked to see his children. Rue informed Parker that the children had spent the night with her parents and told him that she would go to get them. Rue allowed Parker to use the telephone, and then he left, stating that he would return later.
 {¶ 4} Taking her one-year-old child, Rue prepared to leave to pick up her other two children from her parents' home. When she opened the garage door on her way out, two police officers were standing outside. They informed her that two 911 calls had been made from her residence that morning. One was a hang-up, and the other was from an unidentified male caller. Rue told the officers that she had not made the calls and that everything was fine. She also told them that Parker had been at the house looking for his children and that she was on her way to pick up the children.
 {¶ 5} When Rue arrived at her parents' house, they and the two children were not at home. Rue went back to her house and found Parker waiting for her. When she told him that her parents had not been at home, he became furious, and the two argued. The argument became violent, and Parker pulled Rue's hair, strangled her, and threw her against the refrigerator, counter, and stove. Rue was eventually knocked unconscious and woke up in the hallway with her one-year-old son on top of her crying. Parker was gone.
 {¶ 6} Rue went to Good Samaritan Hospital seeking treatment for her injuries. She had no apparent injuries at the time, but some bruising appeared on her chest a few days later. The hospital contacted the police regarding the possible assault, and several police officers arrived at Rue's home. Rue described the incident and told the officers that Parker had threatened to kill her. The officers also viewed damage done to Rue's kitchen wall during the incident. While the officers were present, Parker telephoned Rue. At the officers' direction, Rue put him on speaker phone, and the conversation was recorded by the police. Parker apologized for hurting Rue but stated that he had choked her because she had been strangling her one-year-old child. This allegation was denied by Rue at trial.
 {¶ 7} Parker testified at trial that, after a night of partying by himself and Rue, they had been awoken by the one-year-old's crying. When he would not stop crying, Rue had begun to shake him. Parker had begun choking her so that she would stop harming the child.
 {¶ 8} Evidence was introduced at trial that Parker had previously been convicted of domestic violence.
 {¶ 9} On March 29, 2002, Parker was indicted on one count of domestic violence. A jury trial was held on July 10, 2002, and Parker was found guilty. On July 25, 2002, Parker was sentenced to the maximum of twelve months of imprisonment.
 {¶ 10} Parker appeals, raising three assignments of error.
 {¶ 11} "I. Appellant was denied his constitutional right to effective assistance of counsel."
 {¶ 12} Under this assignment of error, Parker argues that the representation provided by his trial counsel was deficient in several respects.
 {¶ 13} We evaluate ineffective assistance of counsel arguments in light of the two prong analysis set forth in Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See id. at 2064-65. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. See id. at 2064. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of neffective assistance of counsel. See id. at 2065.
 {¶ 14} Parker's first argument regarding his trial counsel's performance is that his trial counsel failed to file a motion to suppress the recorded telephone conversation between himself and Rue. He argues that such a motion bore a reasonable probability of being granted because the state violated R.C. 2933.52, which prohibits the interception of communications, and his rights under the Fourth Amendment to the United States Constitution in obtaining the tape. We disagree with Parker's argument. Even assuming arguendo that a motion to suppress the tape would have been granted, the decision by trial counsel not to file such a motion appears to have been tactical. Parker's defense at trial was that he had choked Rue to stop her from harming her one-year-old child. The tape supported this argument because, in it, Parker stated that he had choked Rue because she had been strangling her child. Thus, his statements on the tape were consistent with his theory at trial — that he choked Rue to stop her from choking her child. Therefore, not seeking to suppress the tape was a reasonable tactical decision by trial counsel. This type of tactical decision is not sufficient to warrant a reversal based upon ineffective assistance of counsel. See State v.Bradley (1989), 42 Ohio St.3d 136, 144, 538 N.E.2d 136.
 {¶ 15} Parker's second argument is that his trial counsel was ineffective in failing to object to the admission of the tape and several photographs of Rue's injuries. We have already addressed trial counsel's performance with regard to the tape and concluded that it was not deficient. With regard to the photographs, Parker argues only that they were taken five days after the incident and that trial counsel should have objected to their admission. We do not see any problem with the admission of the photographs. Testimony by Rue and a police officer established when the photographs were taken; therefore, the jury was aware that they were taken five days after the incident. Parker's argument essentially goes to the weight to be given the photographs, not their admissibility. Furthermore, trial counsel addressed the photographs in his closing argument. Therefore, we see no deficiency in trial counsel's performance with regard to the photographs.
 {¶ 16} Parker's third argument is that trial counsel should have requested a limiting instruction with regard to the evidence of Parker's prior domestic violence conviction. Parker concedes that such evidence was properly admitted but argues that a limiting instruction was necessary to ensure that the jury did not use the evidence as proof that he had acted in conformity with his earlier actions. First, Parker points to the following statement by the prosecutor during closing argument: "The police see her. When they confront her, she gets upset, she tells them what happened, she starts crying, she's afraid he's coming back. Well, why is she afraid? He's got a prior with her. She's been through all this before." Second, Parker complains of testimony by Rue during cross-examination in which she listed several charges brought against Parker due to an October 2001 incident. Third, Parker complains of his own testimony, in which he stated that he had been living with Rue since he got out of jail. Finally, Parker complains of questioning regarding the sentence he received as a result of a prior incident.
 {¶ 17} We note initially that the last incident resulted in the court intervening and informing the prosecutor that it was inappropriate to discuss sentencing and that, if they had heard the answer, the jury was to disregard it. The court handled this incident appropriately, and the jury is presumed to have followed the trial court's instructions. It is impossible to ascertain based upon the record whether or not defense counsel would have objected had the trial court not intervened first. We furthermore decline to say that Parker was prejudiced by his trial counsel's failure to seek a limiting instruction regarding Parker's own testimony that he had been living with Rue since he had been released from jail.
 {¶ 18} With regard to Rue's testimony regarding prior charges against Parker, it appears that the testimony was elicited by the prosecutor in response to defense counsel's questioning regarding whether Rue had lied to police in the past about Parker assaulting her. The testimony was therefore not introduced to show that Parker had acted in conformity but in response to defense counsel's attempt to demonstrate that Rue was lying about the assault at issue in this case.
 {¶ 19} Finally, with regard to the prosecutor's statement in closing argument, the state argues that the prosecutor was attempting to show why Rue was so upset hours after the incident. We disagree with the state's characterization. It appears that the prosecutor's statement that Parker had a prior conviction for assaulting Rue was intended to show that he had a history of violence against her and to support that he had, in effect, acted in conformity with that history. While we are troubled by the prosecutor's statement, we are not inclined to conclude that his trial counsel was ineffective in failing to object or seek a limiting instruction with regard to this testimony. Counsel may have had any number of tactical reasons for not objecting, such as avoiding drawing attention to the statement. We also note that, although the trial court did not give a limiting instruction, the jury was instructed regarding the presumption of innocence and the burden of proof. Furthermore, we are satisfied that these instances did not affect the outcome of the trial because there was substantial evidence against Parker regarding the charged incident. See, also, State v. Lawrence, Montgomery App. No. 19059, 2002-Ohio-5533. In addition to Rue's testimony, the state presented photographs of her injuries, and a police officer testified regarding the damage to Rue's kitchen wall. Parker also admitted to having choked Rue. Furthermore, the state countered Parker's theory that Rue had been abusing her child with testimony from Rue, her mother, and the police negating the accusation of abuse.
 {¶ 20} In his fourth argument, Parker contends that his trial counsel failed to object to several improper comments in the prosecutor's closing arguments. The first we have already discussed in connection with Parker's claim that his counsel should have sought a limiting instruction. During closing argument, the prosecutor stated: "The police see her. When they confront her, she gets upset, she tells them what happened, she starts crying, she's afraid he's coming back. Well, why is she afraid? He's got a prior with her. She's been through all this before." Parker argues that this statement tended to lead the jury to convict based upon emotion rather than proof of guilt. Regardless of whether this is so, trial counsel may not have objected to this statement to avoid drawing attention to it. Such reasonable tactical decisions will not form the basis of a reversal for ineffective assistance of counsel.Bradley, supra. Finally, we are satisfied that the outcome of the trial would not have been different had counsel objected.
 {¶ 21} Parker also argues that the prosecutor's reference to him as the "male suspect" during closing argument should have been objected to because it tended to play upon the emotions of the jury. We do not believe that there was any misconduct in this statement by the prosecutor, and trial counsel was not ineffective in failing to object to it.
 {¶ 22} The prosecuting attorney also made the following comment during closing argument: "Well, we know from the witness stand that the police were called out on February 22nd in response to an assault complaint." This was a misstatement of the evidence. In fact, the police were dispatched due to two 911 calls that gave them no information regarding the possible problem at the residence, and they were told by Rue upon their arrival that she had not called them and that there was no problem. However, we are satisfied that the result of the proceedings would not have been different had counsel objected. The jury heard all the evidence and was instructed that the closing arguments did not constitute evidence. Furthermore, defense counsel pointed out in his closing argument that the statement was incorrect. Therefore, it is improbable that the prosecutor's passing misstatement affected the outcome of the trial.
 {¶ 23} Parker further argues that his trial counsel should have objected to the prosecutor's statement in closing argument that Parker admitted that he had strangled Rue. Parker argues that strangulation implies death and that he did not testify that he had strangled Rue just that he had grabbed her by the neck. In making a closing argument, "[p]rosecutors are entitled to some latitude in arguing what the evidence has shown and what the jury may infer from the evidence." State v.Tibbetts, 92 Ohio St.3d 146, 169, 2001-Ohio-132, 749 N.E.2d 226. Furthermore, "[t]he prosecutor may draw reasonable inferences from the evidence presented at trial, and may comment on those inferences during closing argument." State v. Treesh, 90 Ohio St.3d 460, 466, 2001-Ohio-4,739 N.E.2d 749. In this case, we see no problem with the prosecutor's statement. It is impossible that the jury inferred from the use of the term "strangle" that Rue had been killed as she was present in the courtroom and testified. Furthermore, although Parker did at one point testify that he had merely grabbed Rue by the neck, he testified several times that he had "choked" her. There is not a sufficient distinction between the terms "choke" and "strangle" to support a conclusion that the use of the word "strangle" was improper. Accordingly, trial counsel could not have been expected to object.
 {¶ 24} Parker's fifth argument is that his trial counsel was ineffective in failing to object to or move to strike damaging non-responsive testimony. Parker complains about the following testimony during cross-examination of Rue by the defense counsel:
 {¶ 25} "Q. They said, "Because you lied to us in October." What exactly was that about? Do you have any idea?
 {¶ 26} "A. No, I don't. In October a SWAT team had to come in and get my children because he broke in a front window and snatched the phone from me, hung up my telephone. I was talking to my husband, and I flipped the porch light on to get their attention. They came over, drew me out of the house, and I told them that he was on drugs, and I asked them if they could get my children out of the home.
 {¶ 27} "Q. Is that entirely true?
 {¶ 28} "A. Yes, it is.
 {¶ 29} "* * *.
 {¶ 30} "Q. You take prescription medications? What medication do you take?
 {¶ 31} "A. Xanax, Trazodone and Celexa. The night before he was on Oxycontin.
 {¶ 32} "Q. And you weren't?
 {¶ 33} "A. And he's not prescribed — no, I do not do Oxycontin."
 {¶ 34} As argued by the state, Rue's responses during the first exchange regarding the incident in October were responsive to questions asked. It appears from this exchange that the defense attorney was attempting to elicit testimony regarding the truthfulness of prior accusations Rue had made against Parker. We cannot say that trial counsel was ineffective simply because his questioning did not elicit the desired answers.
 {¶ 35} With regard to Rue's statements about Parker's use of drugs on the night before the incident, this testimony was non-responsive to the question asked. However, we cannot say that this testimony had any impact upon the jury's decision. Parker never denied that he had been under the influence of drugs on the night of February 21, 2002. He testified himself that he had been "high." Therefore, defense counsel did not render ineffective assistance in failing to move to strike this testimony.
 {¶ 36} Parker further points to testimony by Rue listing charges that had been filed against him as a result of the October incident. He argues that his trial counsel should have requested that this testimony regarding prior bad acts be stricken. We have already discussed this testimony and concluded that counsel did not render ineffective assistance with regard to this testimony. There was no basis for striking this testimony.
 {¶ 37} In his sixth argument, Parker argues that his trial counsel failed to object to several instances of leading questions and cites to two page numbers. He does not identify specific questions. Our review of these pages reveals no questioning that could have prejudiced Parker. Accordingly, we will not find that counsel was ineffective in failing to object.
 {¶ 38} In his seventh argument, Parker argues that his trial counsel failed to object to hearsay testimony. In particular he argues that counsel should have objected to the testimony of a police officer that he had been informed by Good Samaritan Hospital that Rue had sought treatment for an assault. However, this statement was not hearsay because it was not offered to prove the truth of the matter asserted. In other words, it was not offered to prove that Rue had sought treatment for assault or that Rue had suffered an assault. Rather, it was offered to explain why the police officer went to Rue's residence to speak with her on the evening of February 22, 2002. Therefore, it was not hearsay, and trial counsel had no reason to object to it.
 {¶ 39} Parker further complains of testimony by a police officer that Rue had told police that she was afraid of Parker, that Parker had threatened to kill her, that Parker possessed a gun, and that "every time she filed charges he just got out and came back and beat her worse." However, this testimony was also not hearsay. It was not offered to prove the truth of Rue's statements but to explain why she was reluctant to press charges against Parker. Furthermore, counsel's failure to object may have been the result of a tactical decision to avoid calling attention to the testimony. In any case, we cannot conclude that the result of the trial would have been different but for counsel's failure to object.
 {¶ 40} Accordingly, we conclude that Parker was not denied the effective assistance of counsel.
 {¶ 41} The first assignment of error is overruled.
 {¶ 42} "II. The court erred in imposing the maximum sentence without placing the required findings on the record."
 {¶ 43} Under this assignment of error, Parker argues that the trial court did not make the appropriate findings under R.C. 2929.14(C) in sentencing him to the maximum sentence.
 {¶ 44} R.C. 2929.14(C) provides: "Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section." It is not necessary that the trial court recite the specific words of the statute, so long as the appropriate findings are made and the reasons for those findings are stated on the record. See State v. Ruby, 149 Ohio App.3d 541,2002-Ohio-5381, 778 N.E.2d, at ¶ 75.
 {¶ 45} In the present case, the trial court stated as follows:
 {¶ 46} "Well, according to the officer here, Mr. Parker, there have been some attempts at treatment: Dora Tate, when you were a juvenile, the Department of Youth Services, Broken Dreams, Sycamore Hospital. This is your eighth felony conviction. It's a violent offense. You have a history of violence.
 {¶ 47} "Considering the seriousness and recidivism factors set forth in the Ohio Revised Code, sentencing is appropriate. If it's a domestic violence, a felony of the fifth degree, the maximum is one year. Your offense warrants that maximum sentence. It is the sentence and judgment of this Court that you be confined to the Corrections Reception Center for Men for a period of one year."
 {¶ 48} The trial court made a finding, albeit implied rather than express, on the record, that Parker posed the greatest likelihood of committing future crimes. Although the better practice is to make express findings to satisfy R.C. 2929.14(C), in this case there can be no doubt as to the finding intended by the trial court. Furthermore, the trial court clearly stated its reasoning for finding that Parker posed the greatest likelihood of committing future crimes. See R.C. 2929.19(B)(2)(d). This was his eighth felony conviction, he had not responded to past attempts at rehabilitation, and he had a history of violence. It is not necessary that the trial court's wording track the language of the statute exactly, so long as one of the required findings is made and the court's reasoning is stated in the record. See Ruby, supra. Therefore, we conclude that the trial court properly complied with R.C. 2929.14(C) and R.C. 2929.19(B)(2)(d) in sentencing Parker to the maximum sentence of twelve months.
 {¶ 49} The second assignment of error is overruled.
 {¶ 50} "III. The cumulative effect of the errors occurring at trial deprived appellant of a fair trial."
 {¶ 51} Under this assignment of error, Parker argues that the cumulative weight of the errors denied him a fair trial. We have identified very few even arguable errors, and those that we have identified were clearly not prejudicial to Parker. Such errors cannot form the basis of a reversal based upon cumulative error. See State v.Nields, 93 Ohio St.3d 6, 41, 2001-Ohio-1291, 752 N.E.2d 859, citing Statev. Hill, 75 Ohio St.3d 195, 212, 1996-Ohio-222, 661 N.E.2d 1068.
 {¶ 52} The third assignment of error is overruled.
 {¶ 53} The judgment of the trial court will be affirmed.
YOUNG, J., concurs.