[Cite as *State v. Flores-Lopez*, 2016-Ohio-7687.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                                        :
                                                              :
    *Plaintiff-Appellee*                        :      Appellate Case No. 26964
                                                              :
v.                                                            :      Trial Court Case No. 2014-CR-3487/2
                                                              :
JOEL FLORES-LOPEZ                          :      (Criminal Appeal from
                                                              :      Common Pleas Court)
    *Defendant-Appellant*                   :
                                                              :

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of November, 2016.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

KIRSTEN KNIGHT, Atty. Reg. No. 0080433, P.O. Box 137, Germantown, Ohio 45327
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-Appellant, Joel Flores-Lopez, appeals from his conviction and sentence on one count of Aggravated Possession of Drugs (100 times bulk or more), with a major drug offender specification, a first-degree felony. After a jury trial, Flores-Lopez was found guilty and was sentenced to 11 years in prison.

**{¶ 2}** In support of his appeal, Flores-Lopez contends that his conviction was based on insufficient evidence and was against the manifest weight of the evidence.

**{¶ 3}** We conclude that the conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 4}** The testimony presented at trial by the State disclosed the following facts. On October 8, 2014, Montgomery County Sheriff's Deputy, Joseph Caito, was on duty with his canine partner, Gunner, when he encountered a white van with Indiana plates driving southbound on Interstate 75 in the area of State Route 35 and Edwin C. Moses Boulevard. Caito stopped the vehicle for a traffic violation, and after informing the driver of the reason for the stop, asked for a driver's license and proof of insurance. At that time, the driver (later identified as Joel Flores-Lopez), stated that he did not have a driver's license. The van was also licensed to a third party, who was not in the vehicle.

**{¶ 5}** Caito asked Flores-Lopez why he was in Ohio, and he responded that he and his passenger were in the Dayton area to do some work or were looking for work. Flores-Lopez indicated that they did home-improvement or construction work. Based on

his experience in police work, Caito became suspicious because of the time of day and the lack of tools that he could see in the van. Specifically, the time was around 1:30 p.m., and was late to be starting any type of construction work. After Flores-Lopez said that he did not have a driver's license, Caito asked for any information that would help in identification. Caito also asked for any addresses where Flores-Lopez would be going, but Flores-Lopez did not have any such addresses. In addition, Flores-Lopez did not have any items like invoices or book estimates indicating what type or work he did, nor could he provide an address from which he had come. Flores-Lopez further stated that even though the vehicle was not registered in his name, it was his primary vehicle.

{¶ 6} Caito asked Flores-Lopez and his passenger, Eleazar Flores-Lopez, to exit the vehicle and stand at Caito's cruiser with another officer, Deputy Beemis, who had arrived. Based on the initial contact with Flores-Lopez, Caito had decided to deploy Gunner around the vehicle to conduct a free-air sniff.

{¶ 7} Gunner was certified to engage as a law enforcement dog throughout the State of Ohio for narcotics and patrol, and was also nationally certified. Gunner was qualified to detect heroin, methamphetamines, marijuana, crack, cocaine, mushrooms, and ecstasy. Caito started at the front driver's side of the vehicle and commanded Gunner to sniff the exterior air around the vehicle for the odor of illegal drugs. As they worked counterclockwise toward the rear of the van and then back up the passenger side toward the front of the van, Gunner alerted to the side rear-passenger door.

{¶ 8} Because he had an alert, Caito searched the van. As he opened the door, he saw a black suitcase between two captain's chairs in the middle row of the van. The distance between the driver's seat and the suitcase was three-and-a-half to four feet.

Someone sitting in the front seat would be able to touch or reach the suitcase.

{¶ 9} When Caito opened the suitcase and removed a few clothing items on top, he immediately saw packaged drugs. Based on his years of law enforcement, he knew these items were illegal contraband, as he had seen money and drugs packaged in a similar way before. The items were wrapped in duct tape and were contained in two big packages.

{¶ 10} On that day, Flores-Lopez was wearing a large t-shirt and size 36 by 32 Levi jeans. Eleazar was wearing a medium Aeropostale brand shirt and size 32 by 30 Levi jeans. The suitcase contained the following items: a pair of men's jeans, size 33 by 32; another pair of men's jeans, size 34 by 32; an extra-large men's long-sleeve hoody; a medium men's striped t-shirt; an extra-large men's button-up shirt; an extra-large men's short-sleeve shirt; two pairs of underwear; a pink bath towel; and some black paper. One drug package was bundled in one of the pairs of jeans.

{¶ 11} The van also contained some tools, including a couple of extension cords, a cordless saw, a tool belt, some type of small hand saw, another corded power saw, a drill, and a hammer.

{¶ 12} Detective Josh Walters, a narcotics detective assigned to Homeland Security since 2010, searched the van after it was impounded. He found the above items in the van, and did not find any items like ladders, drywall, grouting materials, paint brushes, or buckets. He indicated that the drugs, which were ultimately identified as crystalline methamphetamine, would sell for $80 to $130 per gram.

{¶ 13} Matthew Fox, a forensic chemist from the Miami Valley Regional Crime Lab, subsequently tested the packages from the van for the presence of controlled substances.

A total of five bundles were individually wrapped and contained in the two larger packages. One package had three bundles inside, and the other had two.

{¶ 14} Fox, who was qualified as an expert, stated that he weighed the packages before testing. The gross weight of the sample, plus packaging, was 3,660 grams, plus or minus ten grams. From this total amount, Fox tested one sample that was 444 grams plus or minus four grams. The bulk amount of methamphetamine in Ohio is 3 grams. Fox tested only the sample weighing 444 grams because that amount was over 100 times the bulk amount.

{¶ 15} Fox used three tests that are the generally accepted methods of testing drugs in the scientific community. These tests included a sodium nitroprusside color test, a marquis color test, and gas chromatography-mass spectrometry ("GCMS") testing. The nitroprusside test checks for the presence of a compound called secondary aliphatic amines. If that compound is present, the test will obtain a blue reaction, which it did in this case. This is a good first step if methamphetamine is suspected.

{¶ 16} The marquis color test is a general test that produces a variety of colors depending on various compounds that may be present. An orange reaction was produced, which is consistent with methamphetamine. Because other compounds can test orange, Fox then performed the GCMS test. In this test, the gas chromatograph separates out different compounds of a mixture. Mass spectrometry is then used to identify the compounds that are present. Not every compound has a unique identifier, but methamphetamine does. The GCMS test identified crystalline methamphetamine, which is a Schedule I or II drug.

{¶ 17} Fox did not test the remainder of the drugs, but checked each bundle and

determined that the crystalline substances in those bags were consistent in nature with the bag that he tested. They did not differ in color, texture, or consistency.

{¶ 18} On October 17, 2014, Flores-Lopez was indicted for one count of Possession of Drugs (Methamphetamine) in an amount equaling or exceeding 100 times the bulk amount, in violation of R.C. 2925.11(A). This count contained a specification that Flores-Lopez was a major drug offender in that the offense involved a drug included in Schedule I or II, other than marijuana, that consisted of at least 100 times the bulk amount.

{¶ 19} On October 31, 2014, Flores-Lopez filed a motion to suppress, and the trial court later heard testimony from several witnesses, including (as pertinent to this case): Deputy Caito; a police employee who translated during an interview conducted with Flores-Lopez, and, on behalf of Flores-Lopez, an interpreter who had been certified by the Supreme Court of Ohio.[1] After hearing the evidence, the trial court granted the motion to suppress in part and denied it in part. First, the court concluded that Deputy Caito had probable cause to stop Flores-Lopez for a traffic violation, that the stop was not extended beyond what was reasonable to resolve the traffic citations and a tow, and that Caito had probable cause to search the vehicle after the canine alerted on the lawfully-stopped vehicle. As a result, the court refused to suppress evidence seized during the search of the vehicle.

{¶ 20} The court then concluded that the police had violated Flores-Lopez's rights at the police station by continuing to interrogate him after he requested an attorney. As

---

[1] An investigator with the Department of Homeland Security also testified regarding an interview with Eleazar, who was a co-defendant at that time. Subsequently, the trial court granted Flores-Lopez's motion to sever the trials of the two cases.

a result, the court excluded statements that Flores-Lopez made during interrogation at the police station. As was noted, the trial court subsequently granted the motion to sever Flores-Lopez's trial from that of his co-defendant, and Flores-Lopez was tried before a jury on December 1-2, 2015. The jury found him guilty as charged, and the trial court then filed an entry on December 22, 2015, concluding that Flores-Lopez was a major drug offender. At a sentencing hearing held on December 22, 2015, the court noted that Flores-Lopez, a Mexican citizen, had some prior illegal involvement due to having been deported, but had no previous adult felony convictions. However, the court noted that the sentence was a mandatory term under R.C. 2929.13, and sentenced Flores-Lopez to 11 years in prison. The court waived the mandatory fine because Flores-Lopez was indigent.

**{¶ 21}** Flores-Lopez timely appealed from his conviction and sentence.


II. Sufficiency of Evidence and Manifest Weight of the Evidence

**{¶ 22}** Flores-Lopez's sole assignment of error states that:

The Jury's Finding of Guilt Was Not Supported by Sufficient, Credible Evidence and Was Contrary to the Manifest Weight of the Evidence.

**{¶ 23}** Under this assignment of error, Flores-Lopez contends that the jury verdict was not supported by sufficient evidence and was against the manifest weight of the evidence because there were no identifying marks on the suitcase to establish ownership, and no evidence was presented to indicate that he was aware that drugs were located in the suitcase.

**{¶ 24}** "A sufficiency of the evidence argument disputes whether the State has

presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In this situation, we apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states that:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted). *Id.* at paragraph two of the syllabus.

**{¶ 25}** In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. In this situation, a court reviews " 'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *Accord State v.*

*Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193. "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61, 2013-CA-62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

**{¶ 26}** "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Robinson*, 2d Dist. Montgomery No. 26441, 2015-Ohio-1167, ¶ 17; *State v. Putman-Albright*, 2d Dist. Montgomery Nos. 26679, 26685, 2016-Ohio-319, ¶ 19. Consequently, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

**{¶ 27}** Furthermore, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

**{¶ 28}** "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an

appellate judge is at least equally qualified, by reason and experience, to venture an opinion." *Id.* "Consequently, we defer more to decisions on what testimony should be credited, than we do to decisions on the logical force to be assigned to inferences suggested by evidence, no matter how persuasive the evidence may be." *State v. Brooks,* 2d Dist. Montgomery No. 21531, 2007-Ohio-1029, ¶ 28, citing *Lawson* at *4.

{¶ 29} In this case, Flores-Lopez was charged with Possession of Drugs (Methamphetamine), in violation of R.C. 2925.11(A). This subsection of the statute provides that "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." At the time Flores-Lopez was arrested, R.C. 2901.22(B) defined the culpable state of "knowingly" as follows:

A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.[2]

{¶ 30} "Possess" or "possession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).[3] " 'Possession of a drug may be either actual physical

---

[2] R.C. 2901.22 was amended, effective March 23, 2015. *See* Am.S.B. 361, 2014 Ohio Laws File 194. This case was tried after the amendment. However, the trial court stated that it would not use the amended definition, which added a sentence to R.C. 2901.22(B), and would instead use the definition in effect at the time the alleged crime was committed. Transcript of Proceedings, p. 195.

[3] R.C. 2925.01 was also amended after the alleged crime, but no change was made in the wording of R.C. 2925.01(K). *See* Am. Sub. S.B. No. 213, 2016 Ohio Laws File 92.

possession or constructive possession. A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession.' " *State v. Dillard*, 173 Ohio App.3d 373, 2007-Ohio-5651, 878 N.E.2d 694, ¶ 53 (2d Dist.), quoting *State v. Mabry*, 2d Dist. Montgomery No. 21569, 2007-Ohio-1895, ¶ 18.

{¶ 31} Whether a person "knowingly possessed * * * a controlled substance is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998). Furthermore, "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * * ." *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph one of the syllabus.

{¶ 32} As a result, the State was not required to provide direct evidence of Flores-Lopez's knowledge or possession; the conviction could rest on circumstantial evidence. In *State v. Ruby*, 149 Ohio App.3d 541, 2002-Ohio-5381, 778 N.E.2d 101 (2d Dist.), we concluded that a reasonable trier of fact could conclude that the defendant constructively possessed drugs, where the defendant had loaned his wife's vehicle to others in the past, including known drug dealers, and his wife had previously removed drug paraphernalia from the vehicle. When the defendant was stopped by the police, the facts indicated that the defendant had loaned his vehicle to a known drug dealer earlier that day. The dealer was also in the car with the defendant. A crack pipe and piece of crack cocaine were recovered from the floor of the rear passenger compartment, behind the driver's seat. *Id.* at ¶ 42-43.

{¶ 33} We also concluded that the conviction was not against the manifest weight of the evidence. In this regard, we rejected the defendant's argument that he did not

know contraband was in the vehicle and that it had been placed there by the drug dealer. *Id.* at ¶ 44.   Again, we relied on circumstantial evidence.   *Id.* at ¶ 36.

{¶ 34} Courts have also held that "a defendant's 'possession of the keys to the automobile is a strong indication of control over the automobile and all things found in or upon the automobile.'   Thus, when one is the driver of a car in which drugs are within easy access of the driver, constructive possession may be established."   *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 41, quoting *State v. Ray*, 9th Dist. Medina No. 03CA0062-M, 2004-Ohio-3412, ¶ 23.   (Other citations omitted.)

{¶ 35} In *Fry*, the police consensually searched the defendant's vehicle after a traffic stop, and found a marijuana seed on the passenger's seat and a clear plastic baggie of marijuana protruding from under a cell phone located in a storage compartment on the driver's door.   *Id.* at ¶ 11.   The defendant was driving the car and stated that during the day, several people had been in and out of his car.   He also said he did not know how the marijuana got in his car.   *Id.* at ¶ 12.

{¶ 36} When the defendant appealed his convictions, the court of appeals rejected his argument that the convictions were against the manifest weight of the evidence. Although there was no "direct evidence," the court concluded that the circumstantial evidence, including the location of the marijuana and drug paraphernalia, and the fact that the defendant possessed the keys to the car, indicated that the convictions were not based simply on his "mere presence in the proximity of the drugs."   *Id.* at ¶ 42.

{¶ 37} In the case before us, Flores-Lopez was driving the van and told the police the van was his primary vehicle, even though it was registered in another name.   This, and his possession of the keys, were strong indications that he had control over the items

in the vehicle. The suitcase containing the drugs was also located in close proximity to the defendant's seat. In addition, the suitcase contained clothing that was consistent with the two different clothing sizes worn by Flores-Lopez and his passenger.

{¶ 38} Furthermore, a pair of jeans was wrapped around the drugs, and clothing was on top of the drugs. It is difficult to conceive of any explanation other than that the drugs were knowingly in the possession of Flores-Lopez, and that he was aware of the drugs. Accordingly, we conclude that the conviction was not against the manifest weight of the evidence. In view of the discussion above, the conviction was also supported by sufficient evidence.

{¶ 39} Based on the preceding discussion, the sole assignment of error is overruled.

### III. Conclusion

{¶ 40} Flores-Lopez's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN, P.J. and HALL, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Michael J. Scarpelli
Kirsten Knight
Hon. Timothy O'Connell