[Cite as *In re E.C.*, 2018-Ohio-5276.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

IN THE MATTER OF: E.C., A MINOR
CHILD

:
:
:    Appellate Case No. 2018-CA-41
:
:    Trial Court Case No. 2017-1224
:
:    (Appeal from Common Pleas Court-
:    Juvenile Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of December, 2018.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

LAUREN HAMMERSMITH, Atty. Reg. No. 0096671 and TIMOTHY B. HACKETT, Atty. Reg. No. 0093480, Assistant State of Ohio Public Defenders, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
    Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} E.C. appeals from his adjudication of delinquency in the Clark County Court of Common Pleas, Juvenile Division, for an act that, if committed by an adult, would constitute the offense of assault. E.C. challenges the adjudication claiming that it was not supported by sufficient evidence and was against the manifest weight of the evidence. He further contends that the court erred by considering the doctrine of transferred intent in finding that he acted knowingly, since the State specifically noted its intent not to utilize such an argument. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On May 15, 2015, E.C. was charged by complaint in the Gallia County Juvenile Court. The complaint alleged that E.C. was delinquent by reason of committing an act that would constitute burglary if committed by an adult. E.C. was subsequently adjudicated delinquent. Because E.C. was a resident of Clark County, the matter was transferred to the Clark County Juvenile Court and assigned case number 2015-0670. Thereafter, a dispositional hearing was conducted and the juvenile court ordered a suspended commitment to the Ohio Department of Youth Services (ODYS). E.C. was also referred to a rehabilitation center and ordered to comply with the terms of his parole. In December 2015, E.C. violated the terms of his parole and was committed to ODYS.

{¶ 3} In January 2017, E.C. was again placed on parole. However, that same month, he again violated the terms of his parole. At that time, his parole was revoked and he was committed to ODYS for a term of 90 days. Thereafter, he was again placed on parole.

{¶ 4} In September 2017, a notice of parole violation was filed with the juvenile court. The notice alleged that E.C. had been questioned by the Springfield Police outside a bar at approximately 1:30 a.m., thereby violating his parole rule requiring him to be in his residence between 8 p.m. and 7 a.m. A hearing was conducted on December 4, 2017 at which time E.C. admitted the violation. The court ordered E.C. to be held in the Clark County Juvenile Detention Center ("the detention center") pending disposition.

{¶ 5} On December 15, 2017, prior to the disposition of the parole violation, E.C. was charged with delinquency by reason of committing the offense of assault against Melanie Rogers and Matthew Hayes, who were employees of the detention center. The case was assigned number 2017-1224. A trial was conducted on February 21, 2018.

{¶ 6} During the trial, the parties stipulated to the admission of a video of the incident which led to the assault charges.[1] In the video, E.C. and five other juveniles were seated in a classroom in the detention center. Melanie Rogers was present in the room. E.C. and another juvenile, D.G., rose from their chairs and approached each other. Rogers moved between the two boys at which time E.C. threw a punch at D.G. As the two continued to fight, Rogers became entangled with the combatants while she attempted to separate them. As the fight continued, Hayes entered the room and began to restrain E.C. while Rogers attempted to restrain D.G. D.G. immediately complied and even appeared to help Rogers off the floor. After the boys were separated, E.C. continued to struggle against Hayes. A third worker entered the room and escorted D.G. out of the room. Rogers then returned to help Hayes with E.C., who continued to resist.

---

[1] The video of the incident does not have audio.

At one point, E.C. moved his arm upward toward Rogers's head, and her head, in a fashion corresponding to E.C.'s arm movement, can be observed moving backward. E.C. then shoved Rogers toward the door. Hayes and E.C. continued to struggle and eventually faced each other in a boxing position. E.C. grabbed a chair, started to lift it upward, and then put it back down. At that point, E.C. stopped struggling.[2]

**{¶ 7}** The juvenile court acquitted E.C. of assault with regard to Hayes, but adjudicated E.C. delinquent upon a finding that he assaulted Rogers. A dispositional hearing was conducted on March 2, 2018. In case number 2017-1224, the court committed E.C. to ODYS for an indefinite term consisting of a minimum term of 6 months and a maximum not to exceed his 21st birthday. In case number 2015-0670, the court revoked E.C.'s parole and committed him to a term of 90 days at ODYS.

**{¶ 8}** E.C. appeals.[3]

## II. Sufficiency and Manifest Weight of the Evidence

**{¶ 9}** E.C.'s first and second assignments of error provide as follows:

THE CLARK COUNTY JUVENILE COURT VIOLATED E.C.'S RIGHT TO DUE PROCESS OF LAW, BECAUSE ITS ADJUDICATION FOR ASSAULT WAS NOT SUPPORTED BY SUFFICIENT AND RELIABLE EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND

---

[2] Hayes, Rogers and E.C. testified during trial. Testimony relevant to this appeal will be discussed below.

[3] The cases were consolidated for purposes of appeal. E.C. has not asserted any assignments of error in 2015-0670.

ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

THE CLARK COUNTY JUVENILE COURT VIOLATED E.C.'S RIGHT TO DUE PROCESS OF LAW, BECAUSE THE ADJUDICATION FOR ASSAULT WAS NOT SUPPORTED BY CREDIBLE EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶ 10} In these assignments of error, E.C. contends that his juvenile adjudication with regard to the assault offense was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶ 11} When considering whether a juvenile's adjudication is supported by sufficient evidence, an appellate court applies the same standard of review that is applied in adult criminal cases. *In re C.M.*, 12th Dist. Butler No. CA2003-03-063, 2004-Ohio-1927, ¶ 10, citing *In re Washington*, 81 Ohio St.3d 337, 339, 691 N.E.2d 285 (1998). "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing a claim as to the sufficiency of the evidence, "the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at ¶ 11, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph

two of the syllabus.

{¶ 12} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Id.* at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013 CA 61, 2013 CA 62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

{¶ 13} Further, "[a]lthough sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *accord State v. Flores-Lopez*, 2d Dist. Montgomery No. 26964, 2016-Ohio-7687, ¶ 26. Therefore, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 14} Finally, the trier of fact sees and hears the witnesses at trial; thus, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of

particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). Accordingly, the credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *State v. Hammad*, 2d Dist. Montgomery No. 26057, 2014-Ohio-3638, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility "unless it is patently apparent that the factfinder lost its way." (Citation omitted.) *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510, *4 (Oct. 24, 1997).

{¶ 15} E.C. was adjudicated delinquent for assault in violation of R.C. 2903.13(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *."[4] "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. * * *" R.C. 2901.22(B). Physical harm is defined at R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶ 16} E.C. contends that the State failed to prove that he acted knowingly or that he caused physical harm to Rogers. In support, he notes that at trial he testified that he did not intend to harm Rogers. He also cites Hayes's testimony that E.C. had no "intent" to hurt Rogers and that E.C. was merely attempting to free his arm when "his fingertips or something hit [Rogers] across the chin or something." Finally, he cites Rogers's

---

[4] If committed by an adult, an assault is, typically, a first degree misdemeanor. *See* R.C. 2903.13(C)(1). However, the circumstances of the offense can elevate the offense to a felony. If the offense in this case had been committed by an adult, it would have been a fifth degree felony. This is so because the offense occurred on the grounds of a local correctional facility, the victim was an employee of the facility, and E.C. was in custody when the offense occurred. *See* R.C. 2903.13(C)(4)(a).

testimony that she did not observe E.C. hit, bite or kick her, and that she did not know how, or when, her bruising and bloody lip occurred.

**{¶ 17}** "Commonly, there is no direct evidence of a defendant's state of mind so the state must rely on circumstantial evidence to satisfy this element of its case. A defendant's state of mind may be inferred from the totality of the surrounding circumstances." *State v. Rodano*, 2017-Ohio-1034, 86 N.E.3d 1032, ¶ 43 (8th Dist.), quoting *In re Horton*, 4th Dist. Adams No. 04CA794, 2005-Ohio-3502, ¶ 23.

**{¶ 18}** While we are aware of the testimony of E.C., Hayes, and Rogers, as described above, we note that E.C. also testified that, while he was angry when he was fighting D.G., he became even angrier after that fight concluded because he felt that Hayes was trying to choke him. He also testified that he wanted to fight Hayes, and he admitted that he pushed Rogers and continued to struggle with her. E.C. can be observed on the videotape struggling with Rogers, at which point he made contact with her face and then proceeded to violently push her toward the door. Hayes's testimony corroborates the contact between E.C. and Rogers's face.

**{¶ 19}** We are not prepared to say that the juvenile judge lost his way when he found that E.C. knowingly caused Rogers harm. The court was free to credit all, some or none of the testimony presented at trial. Regardless of whether Rogers thought that E.C. had hit her, the video and Hayes's testimony provide a basis for a reasonable finder of fact to conclude E.C. hit Rogers in the lower portion of her face while struggling with her. Further, a reasonable finder of fact may infer that this contact caused Rogers's lip to bleed. As noted, E.C. acknowledged that he was angrier at that point than he had been during the fight with D.G. He also admitted to pushing and struggling with Rogers.

Thus, the court could have reasonably concluded that E.C. was aware that his conduct would probably cause injury, satisfying the culpability state of knowingly set forth in the assault statute.

{¶ 20} E.C. also argues that, since Rogers's position required her to intervene in fights that occurred between juveniles housed in the detention center, this court would "create a slippery slope" by concluding that E.C.'s "touches" to Rogers constituted assault. We do not agree.

{¶ 21} The fact that Rogers's job required her to control the juveniles in the detention center was irrelevant to the determination of this case. E.C.'s "touches" included hitting Rogers in the lower face and causing her lip to bleed. While a person's job might require her to attempt to stop inmate fighting, it cannot require her to submit to a knowing assault.

{¶ 22} We conclude that the adjudication was supported by sufficient evidence, and it was not against the manifest weight of the evidence. The first and second assignments of error are overruled.

### III. Transferred Intent

{¶ 23} E.C.'s third assignment of error states:

THE CLARK COUNTY JUVENILE COURT ABUSED ITS DISCRETION WHEN IT APPLIED THE LEGAL THEORY OF TRANSFERRED INTENT WHEN IT WAS DELIBERATELY WAIVED BY THE STATE.

{¶ 24} E.C. contends that the juvenile court abandoned its role as a neutral arbiter

when it utilized the doctrine of transferred intent in adjudicating him delinquent.

{¶ 25} "The doctrine of transferred intent indicates that where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person and the individual attempting harm is held criminally liable as if he both intended to harm and did harm the same person." *State v. Free*, 2d Dist. Montgomery No. 15901, 1998 WL 57373, *10, quoting *State v. Mullins*, 76 Ohio App.3d 633, 636, 602 N.E.2d 769 (10th Dist.1992).

{¶ 26} During closing argument, the State indicated that it did not intend to rely upon this doctrine to prove the mens rea for assault, because the assault charge was not based upon the time frame during which E.C. was fighting D.G. Instead, the prosecutor specifically stated that the assault charge was strictly related to the events that occurred after D.G. was removed from the scene, thereby rendering the doctrine inapplicable. In other words, because the assault did not occur during the time the two boys were fighting each other, and because the State did not claim that E.C.'s intent to harm D.G. should transfer to Rogers, the State apparently concluded that utilization of the doctrine was unnecessary.

{¶ 27} We note that the court, in its decision, did discuss the doctrine. However, we cannot say that the court improperly applied it to this case. Instead, the court specifically stated that the evidence presented at trial supported a finding that E.C. knowingly caused physical harm to Rogers. The court's findings of fact indicate that its conclusions were based upon a finding that, after the fight with D.G. had concluded, E.C. continued to fight with Hayes and Rogers, and E.C. pushed Rogers and struck her in the face, causing her lip to bleed. The juvenile court's finding regarding how Rogers was

injured was not dependent upon the use of the doctrine of transferred intent.

{¶ 28} The third assignment of error is overruled.


### IV. Conclusion

{¶ 29} All of E.C.'s assignments of error being overruled, the judgment of the juvenile court is affirmed.


. . . . . . . . . . . .


WELBAUM, P.J. and HALL, J., concur.


Copies sent to:

Andrew P. Pickering
Lauren Hammersmith
Timothy B. Hackett
Hon. Thomas J. Capper