[Cite as *State v. Bustos*, 2020-Ohio-5028.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-19 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-153 |
| | : | |
| SIMON BUSTOS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of October, 2020.

. . . . . . . . . . .

JANNA L. PARKER, Atty. Reg. No. 0075261, Assistant Prosecuting Attorney, Miami County Prosecutor's Office, 201 West Main Street, Troy, Ohio 45373
  Attorney for Plaintiff-Appellee

TRAVIS DUNNINGTON, Atty. Reg. No. 0096519, 117 South Main Street, Suite 400, Dayton, Ohio 45422
  Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Simon Bustos, appeals from a judgment of the Miami County Court of Common Pleas, which found him guilty on his no contest pleas to three counts of aggravated trafficking in methamphetamine. In support of his appeal, Bustos specifically challenges the trial court's decision to impose consecutive sentences, arguing that the trial court's statutorily-required consecutive-sentence findings were unsupported by the record. Bustos also claims that the trial court incorrectly applied the sentencing factor in R.C. 2929.12(B)(7), which provides that an offender's conduct is more serious if his offense was committed for hire or as part of an organized criminal activity. According to Bustos, there was no evidence in the record establishing that this factor applied to his offenses. For the reasons outlined below, we find that both of Bustos' claims lack merit. Therefore, the judgment of the trial court will be affirmed.

### Facts and Course of Proceedings

{¶ 2} On March 28, 2019, a Miami County grand jury returned an indictment charging Bustos with three counts of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1). The first count was a second-degree felony charged under R.C. 2925.03(C)(1)(c). The remaining two counts were first-degree felonies charged under R.C. 2925.03(C)(1)(d). All three counts were alleged to have occurred in the vicinity of a juvenile.

{¶ 3} The charges stemmed from three controlled drug transactions that took place in Miami County, Ohio, on July 11 and 26, 2018, and August 15, 2018. During each of the transactions, Bustos provided a wired confidential informant with various amounts of methamphetamine. Bustos sold the confidential informant 12.83 grams during the first

transaction, 26.80 grams during the second transaction, and 25.57 grams during the third transaction. Small children were observed with Bustos during each of the three drug transactions at issue.

{¶ 4} On July 24, 2019, Bustos entered a no contest plea to the three trafficking offenses in the indictment. The trial court accepted Bustos' no contest plea and found him guilty on all counts. After finding Bustos guilty, the trial court ordered a presentence investigation report ("PSI") and scheduled the matter for a sentencing hearing on August 12, 2019.

{¶ 5} At the sentencing hearing, the trial court imposed a mandatory prison term of four years for the second-degree felony trafficking offense. The trial court also imposed a mandatory prison term of eight years for each of the two first-degree felony trafficking offenses. The trial court then ordered the eight-year prison terms to run concurrently with one another and consecutively to the four-year term, for a total mandatory term of 12 years in prison. The trial court chose these prison terms after applying the sentencing factor set forth in R.C. 2929.12(B)(7). In applying that factor, the trial court found that Bustos' conduct was more serious than conduct that normally constitutes the offense of aggravated drug trafficking because his "offenses were committed for hire as part of an organized criminal activity." Sentencing Tr. p. 5.

{¶ 6} Bustos now appeals, raising two assignments of error for review. Because both of Bustos' assignments of error challenge his prison sentence, we will review the assignments of error together.

**First and Second Assignments of Error**

**{¶ 7}** Under his first assignment of error, Bustos challenges the trial court's decision to impose consecutive sentences. Although Bustos concedes that the trial court made the statutorily-required consecutive-sentence findings in R.C. 2929.14(C)(4), Bustos nevertheless claims that those findings were unsupported by the record. Under his second assignment of error, Bustos claims that there was nothing in the record to support the trial court's finding under R.C. 2929.12(B)(7), i.e., that his conduct was more serious as a result of his offenses being committed as part of an organized criminal activity. We disagree with both of Bustos' claims.

*Standard of Review*

**{¶ 8}** When reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7. Pursuant to the plain language of R.C. 2953.08(G)(2), this court may vacate or modify a defendant's sentence only if we determine by clear and convincing evidence that: (1) that the record did not support the trial court's findings under relevant statutes; or (2) that the sentence was otherwise contrary to law. *Id.* at ¶ 1. "A sentence is contrary to law if the sentence falls outside the statutory range for the particular degree of offense or the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12." (Citation omitted.) *State v. Saylor*, 2d Dist. Champaign No. 2018-CA-14, 2019-Ohio-1025, ¶ 18.

*Consecutive Sentences*

{¶ 9} As previously noted, Bustos is challenging the trial court's decision to impose consecutive sentences. One of the relevant statutes referred to in R.C. 2953.08(G)(2) is the statute governing the imposition of consecutive sentences, R.C. 2929.14(C)(4). Pursuant to R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if it finds that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 10} "[W]here a trial court properly makes the findings mandated by R.C.

2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings." *State v. Withrow*, 2016-Ohio-2884, 64 N.E.3d 553, ¶ 38 (2d Dist.). This is "a very deferential standard of review," as "the question is not whether the trial court had clear and convincing evidence to support its findings, but rather, whether we clearly and convincingly find that the record failed to support the trial court's findings." (Citations omitted.) *Id.* In applying that standard of review, "the consecutive nature of the trial court's sentencing should stand unless the record overwhelmingly supports a contrary result." (Citation omitted.) *Id.* at ¶ 39.

{¶ 11} "[A] trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. The trial court is also not required "to recite any 'magic' or 'talismanic' words when imposing consecutive sentences." *State v. Horobin*, 2d Dist. Montgomery No. 26639, 2015-Ohio-5300, ¶ 7, quoting *State v. Graham*, 2d Dist. Montgomery No. 25934, 2014-Ohio-4250, ¶ 36. (Other citation omitted.) "[A] word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29. Therefore, the trial court's failure to "specifically state that the findings were being made under R.C. 2929.14(C)(4) is immaterial, [if] it is clear from the record that the trial court engaged in the correct analysis." *State v. Chaney*, 2d Dist. Clark No. 2015-CA-116, 2016-Ohio-

5437, ¶ 15.

{¶ 12} In this case, the trial court did not discuss the consecutive-sentence requirements under R.C. 2929.14(C)(4) at the sentencing hearing. The trial court did, however, make several findings during the hearing that addressed the requirements under R.C. 2929.14(C)(4). The trial court thereafter included the required consecutive-sentence findings in its sentencing entry using the statutory language set forth in R.C. 2929.14(C)(4). We have held that such conduct is sufficient for imposing consecutive sentences. *See Chaney* at ¶ 10-19 (imposition of consecutive sentences was not in error where the trial court failed to refer to all the required consecutive-sentence requirements at the sentencing hearing, but made several findings at the hearing that addressed the requirements, and included all the required consecutive-sentence findings in the sentencing entry). *Contrast Graham* at ¶ 41-45 (imposition of consecutive sentences was erroneous where trial court did not make findings that addressed the consecutive-sentence requirements and also failed to include the consecutive-sentence findings in the sentencing entry).

{¶ 13} Bustos, however, does not dispute that the trial court made the consecutive-sentence findings required under R.C. 2929.14(C)(4). Bustos instead argues that there was nothing in the record to support the trial court's consecutive-sentence findings. Specifically, Bustos contends that the record did not support the trial court's finding that his history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by him. The PSI, however, indicates otherwise.

{¶ 14} According to the PSI, Bustos had a criminal history dating back to 1996. Between 1996 and 2011, Bustos had six criminal charges brought against him in Florida,

two of which involved drug offenses. Of those six charges, Bustos was convicted of two felonies. Specifically, Bustos was convicted in 2009 for third-degree felony possession of a controlled substance. Bustos was then convicted in 2011 for unlawful driving as a habitual traffic offender, also a third-degree felony. Bustos additionally had three prior criminal charges out of Miami County, Ohio, for theft, criminal trespass, and trafficking in drugs. Of those charges, Bustos was convicted of theft as a first-degree misdemeanor in 2015. Given that Bustos had continually been charged with criminal activity over the past 20 years and had two felony convictions, one of which was drug-related, we cannot conclude that there was nothing in the record supporting the trial court's finding that his criminal history demonstrated a need to protect the public from future crime by him.

{¶ 15} Bustos also argues that there was nothing in the record to support the trial court's finding that consecutive sentences were not disproportionate to the seriousness of his conduct and to the danger he posed to the public. Again, the PSI established otherwise. The police report included with the PSI indicated that Bustos conducted three separate drug transactions on three different dates, and that Bustos brought small children with him to each of those transactions. The PSI also indicated that Bustos admitted to being on methamphetamine while conducting the drug transactions. Therefore, Bustos committed the offenses while on drugs and in the presence of small children. The trial court also found that Bustos' conduct was more serious than conduct that normally constitutes aggravated drug trafficking because his offenses were committed as part of an organized criminal activity.

{¶ 16} The PSI further indicated that Bustos showed no remorse for his offenses and that he had demonstrated a substance abuse problem that he refused to

acknowledge. The PSI also indicated that Bustos failed to recognize the severity of his offenses. According to the PSI examiner, Bustos made a statement indicating that his conduct did not warrant his being imprisoned with "rapists, murderers, and thieves." The trial court found that this statement indicated that Bustos failed to recognize that selling methamphetamine was just as serious an offense when considering that anyone could overdose on the drug and die.

{¶ 17} Based on the foregoing information, we cannot conclude that there was nothing in the record supporting the trial court's finding that consecutive sentences were not disproportionate to the seriousness of Bustos' conduct and to the danger he posed to the public. Although not challenged by Bustos, we further find that the record did not fail to support the trial court's finding that consecutive service was necessary to protect the public from future crime or to punish Bustos.

For the foregoing reasons, we do not find that the record clearly and convincingly failed to support the trial court's decision to impose consecutive sentences.

*Organized Criminal Activity*

{¶ 18} Bustos next challenges his prison sentence on grounds that the trial court improperly found that his conduct was more serious because he committed the offenses "for hire as part of an organized criminal activity." Sentencing Tr. p. 5. According to Bustos, there was nothing in the record to support that finding. We disagree.

{¶ 19} As a preliminary matter, we note that before imposing any sentence, the trial court is required to consider the purposes and principles of felony sentencing in R.C. 2929.11 and the various seriousness and recidivism factors set forth in R.C. 2929.12.

*State v. Smith*, 2d Dist. Champaign No. 2015-CA-25, 2016-Ohio-3483, ¶ 9, citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38. R.C. 2929.12(B) mandates that a sentencing court consider whether an offender engaged in conduct that was more serious than conduct that normally constitutes the offense in question by considering a list of nine factors, and any other relevant factors. As previously noted, the trial court in this case found that factor (B)(7) of the statute applied to make Bustos' conduct more serious because his offenses were committed as part of an organized criminal activity.

{¶ 20} The Supreme Court of Ohio has determined that the same deferential standard of review set forth in R.C. 2953.08(G)(2)(a) applies to the requirements of R.C. 2929.11 and R.C. 2929.12. *Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23 (although "some sentences do not require the findings that R.C. 2953.08(G)[2][a] specifically addresses[,] * * * it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court"). Consequently, "an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Id.*

{¶ 21} In this case, the aggregate, 12-year prison sentence imposed by the trial court was not clearly and convincingly contrary to law, because the individual prison terms imposed by the trial court (four years for the second-degree-felony aggravated trafficking offense and eight years for the two first-degree-felony aggravated trafficking offenses) were within the authorized statutory range, and the trial court considered the purposes

and principles of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. *See Saylor*, 2d Dist. Champaign No. 2018-CA-14, 2019-Ohio-1025, ¶ 18; R.C. 2929.14(A)(1)(b) and R.C. 2929.14(A)(2)(b).

{¶ 22} Despite this, Bustos contends that the trial court erred when it found that the seriousness factor under R.C. 2929.12(B)(7) applied to him. Therefore, the central issue for review is whether we clearly and convincingly find that there was nothing in the record to support that finding and the resulting sentences.

{¶ 23} The term "organized criminal activity" is not defined in Chapter 2929 of the Ohio Revised Code. As a result, courts apply "a case-by-case analysis to determine whether an offense is part of an organized criminal activity, keeping in mind that the absence of a definition of 'organized criminal activity' is to be construed against the State, not the defendant." *State v. Castle*, 2016-Ohio-4974, 67 N.E.3d 1283, ¶ 14, citing *State v. Lyles*, 8th Dist. Cuyahoga No. 97524, 2012-Ohio-3362, ¶ 13 and R.C. 2901.04(A). Accordingly, " '[t]here is not a bright line test for "organized criminal activity," nor does it have a singular application.' " *Id.*, quoting *State v. Orms*, 10th Dist. Franklin No. 14AP-750, 2015-Ohio-2870, ¶ 24.

{¶ 24} In determining whether an offense was part of an organized criminal activity, "[c]ourts have generally considered the scope and length of the criminal activity, whether the offense was committed spontaneously/impulsively or with extensive planning, the number of people involved, and the nature of the charges in determining whether there was 'an organized criminal activity.' " *Id.* at ¶ 15, citing *Orms*; *State v. Coran*, 2d Dist. Clark No. 2003-CA-80, 2004-Ohio-6874; *State v. Miller*, 4th Dist. Washington No. 07CA1, 2008-Ohio-1059; *State v. Radcliff*, 10th Dist. Franklin Nos. 97APA08-1054, 97APA08-

1056, 1998 WL 120304 (Mar. 17, 1998).

{¶ 25} Some courts have held that drug trafficking, by its nature, is inherently part of an organized criminal activity. *See, e.g., State v. King*, 6th Dist. Lucas No. L-98-1005, 1998 WL 484135 (Aug. 14, 1998). This court, however, has declined to adopt such a view. *See Coran* and *Castle*. Instead, this court has "adopted the view that 'an organized criminal activity,' in the case of a drug trafficking offense, must be supported by something more than 'random activity carried about by a single individual,' and by activity greater than what would be normally expected for someone involved in the street sale of illicit drugs." *Castle* at ¶ 17, quoting *Coran* at ¶ 17-19.

{¶ 26} Here, the record established that Bustos' drug trafficking offenses were not random, isolated events. Rather, the PSI indicated that Bustos participated in three drug transactions on three separate dates over a one-month period. Bustos also made a statement to the PSI examiner suggesting that the proceeds from his drug sales were used to financially support his children. From that statement, the trial court could have reasonably concluded that the proceeds were a significant source of income that indicated Bustos was participating in an ongoing criminal venture.

{¶ 27} The record also established that Bustos engaged in extensive planning. The PSI indicated that Bustos was known to frequently change vehicles, license plates, and cell phone numbers to avoid detection from law enforcement. Additionally, the drug transactions at issue were pre-arranged by phone calls and took place at predetermined locations. Because the record established that there were multiple transactions and extensive planning, the trial court could have reasonably found that this indicated that Bustos was part of organized criminal activity.

**{¶ 28}** Most importantly, though, the record established that Bustos provided large amounts of methamphetamine during each of the drug transactions at issue. The first transaction yielded 12.83 grams of methamphetamine, which was just over four times the bulk amount. The second and third transactions yielded 26.80 and 25.57 grams, which were both over 8 times the bulk amount.[1] Given the fact that the drug transactions at issue included large amounts of methamphetamine, the trial court could have reasonably determined that the methamphetamine was being provided for more than just personal use, and was instead part of a larger resale enterprise.

**{¶ 29}** Although there was not an abundance of direct evidence indicating that Bustos committed his offenses as part of an organized criminal activity, we cannot say that there was nothing in the record supporting that finding. When considering that Bustos conducted multiple pre-arranged drug transactions, engaged in extensive planning to evade law enforcement, and sold large amounts of methamphetamine, the trial court could have reasonably determined that Bustos' offenses were committed as part of an organized criminal activity. Even if there had been nothing in the record to support that finding, the trial court also specifically found that Bustos' offenses were more serious because they involved three separate buys, on three separate dates, with children present. *See* Sentencing Tr. p. 8.

**{¶ 30}** Based on the foregoing, the trial court's finding that Bustos' conduct was more serious than conduct that normally constitutes aggravated drug trafficking due to his offenses being committed as part of an organized criminal activity was not

---

[1]In Ohio, the bulk amount of methamphetamine is 3 grams. R.C. 2925.01(D)(1)(g); *State v. Flores-Lopez*, 2d Dist. Montgomery No. 26964, 2016-Ohio-7687, ¶ 14.

unsupported by the record. We further find that the record did not otherwise fail to support the trial court's sentencing decision. Accordingly, we have no cause to disturb the trial court's decision to impose mid-range prison terms for each of Bustos' aggravated trafficking offenses.

{¶ 31} For the foregoing reasons, Bustos' first and second assignments of error are overruled.

## Conclusion

{¶ 32} Having overruled both of Bustos' assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J., concurs in judgment only.

HALL, J., concurs.

Copies sent to:

Janna L. Parker
Travis Dunnington
Hon. Stacy M. Wall